# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

## CASE NO.: 5:19-CV.-482

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

-- against --

EFUEL EFN CORP., SLAVOLJUB STEFANOVIC, and LJUBICA STEFANOVIC,

                Defendants.

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendants Efuel EFN Corp. ("Efuel" or the "Company"), Efuel's Chief Financial Officer Slavoljub Stefanovic ("S. Stefanovic"), and Efuel's Chief Executive Officer Ljubica Stefanovic ("L. Stefanovic" and collectively, "Defendants"), alleges as follows:

## SUMMARY OF THE ALLEGATIONS

1. Defendants engaged in a fraudulent scheme to inflate and falsely report the value of Efuel's assets between September 2016 and February 2018 (the "Relevant Period"). Efuel, a publicly traded corporation based in Wildwood, Florida, entered into an agreement to lease land purportedly containing a collection of gold mines located in Siskiyou County, California. The agreement gave Efuel the option to purchase the land outright for $750,000 in cash following a six-year lease term.

2. Defendants immediately recorded the land and its purported gold deposits as a $500 million asset in Efuel's financial report for the first quarter of 2017 and in the Company's subsequent quarterly and annual financial reports for 2017. Each of the reports stated that it had been prepared in accordance with generally accepted accounting principles ("GAAP").

3. In the months leading up to the agreement and for the duration of over a year, Defendants issued numerous press releases boasting that the mines contained billions of dollars' worth of gold and other minerals and that Efuel was undergoing exploratory and developmental activities in order to realize that value.

4. Contrary to what they were telling the public, Defendants knew, or were severely reckless in not knowing, that there was no support for their claims regarding the mines' financial value, that Efuel's financial statements were not prepared in accordance with GAAP, and that they had not undertaken any exploratory or developmental activities on the land.

5. Through their conduct, Defendants violated, and unless restrained and enjoined, will continue violating, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R.§ 240.10b-5

**NATURE OF THE PROCEEDING AND RELIEF SOUGHT**

6. The Commission brings this action pursuant to the authority conferred on it by Sections 21(d)(1)-(3), and (5) of the Exchange Act, 15 U.S.C. §§ 78u(d)(1)-(3), and (5), seeking a final judgment: (a) permanently restraining and enjoining Defendants from engaging in the acts, practices, and courses of business alleged herein;

(b) permanently prohibiting S. Stefanovic and L. Stefanovic (the "Stefanovics") from acting as an officer or director of any issuer that has a class of securities registered under Section 12 of the Exchange Act, 15 U.S.C. § 78*l*, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d); (c) permanently prohibiting the Stefanovics from participating in any offering of a penny stock, pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d); (d) ordering Defendants to disgorge ill-gotten gains and to pay prejudgment interest thereon; and (e) ordering Defendants to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this action pursuant to Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

8.  Venue is proper in the Middle District of Florida pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Defendants, directly or indirectly, have made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, or of a facility of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this Complaint. Certain of these transactions, acts, practices and courses of business occurred in the Middle District of Florida, including, among other things, preparation of the financial reports and press releases containing the misstatements and omissions regarding the purported gold mine assets.

**DEFENDANTS**

9.      **Efuel** is a non-Commission-reporting company incorporated in Florida. Its principal place of business is the "Cherokee Trading Post" and "Cherokee Café," a retail store and restaurant operated by the Stefanovics, located in Wildwood, Florida. Efuel purports to be a holding company with five business lines: (1) solar and wind energy; (2) real estate and agriculture; (3) investments; (4) retail and hospitality; and (5) construction. During the Relevant Period, Efuel's shares were quoted on OTC Markets Group Inc. ("OTC Markets"), a U.S.-based financial market that provides price and liquidity information for over-the-counter securities, under the ticker symbol "EFLN." EFLN's stock qualifies as a "penny stock," that is, stock of a small company that typically trades for less than $5 per share, as defined in Section 3(a)(51) of the Exchange Act, 15 U.S.C. § 78c(a)(51) and Rule 3a51-1 thereunder, 17 C.F.R.§ 240-3a51-1.

10.     **S. Stefanovic**, age 68, resides in Leesburg, Florida. In 2011, he and his wife, L. Stefanovic, acquired a majority interest in Efuel, which at the time was a purported web development company. He was Efuel's CFO at all relevant times. He also founded and serves as the President, CEO, and Finance Director of Euro-American Finance Network, Inc. He is not a Certified Public Accountant and has no formal training or background in accounting.

11.     **L. Stefanovic**, 69, resides in Leesburg, Florida. She was Efuel's CEO at all relevant times. She also serves as the Vice President and Treasurer of Euro-American Finance Network, Inc. During the Relevant Period, L. Stefanovic sold $15,000 worth of Efuel stock from her personal brokerage account.

## RELATED ENTITY

12.     **Euro-American Finance Network, Inc.** is a purported import/export company that purportedly audited each of Efuel's financial statements at issue. It is owned and operated by S. Stefanovic.

## FACTS

**A.      Background**

13.     The Stefanovics acquired Efuel in January 2011. As CFO of Efuel, S. Stefanovic is involved in all aspects of the Company's business, including the operation of the Cherokee Trading Post and Cherokee Café, evaluating potential business opportunities, developing real estate and other commercial projects, obtaining financing, and preparing the Company's financial statements, press releases, and other communications with Efuel's investors.

14.     As CEO of Efuel, L. Stefanovic reviews and approves Efuel's financial statements and press releases.

15.     During the Relevant Period, Efuel listed its stock on OTC Markets' "Pink" market, the most speculative tier available on the OTC Markets platform. Within the "Pink" market, securities are classified into three categories based on the quality and quantity of information the issuer provides to investors. The highest of these tiers is "Current Information." One way for a company to qualify for this designation is to make its financial reports and an attorney letter publicly available to investors through the OTC Markets website.

16. During the Relevant Period, Efuel qualified for the "Current Information" designation on OTC Markets' "Pink" market by publishing "quarterly" and "annual" reports along with two attorney opinion letters under the "Disclosure" section of its issuer page on the OTC Markets website. Each of these financial reports was incorporated by reference in an "OTC Pink Basic Disclosures Guidelines" form that OTC Markets required all "Pink" market issuers to file, and which set forth basic background and other information about the Company and its stock.

17. Efuel periodically issued press releases that it posted under the "Research Reports" section of its issuer page on the OTC Markets website and occasionally published through various newswire services and on the message boards of InvestorsHub.com, an online forum for penny stock investors.

**B.     Efuel Enters Into the Gold Mine Lease-and-Purchase Agreement**

18. In or around September 2016, S. Stefanovic answered an online advertisement by The Claim Post, a Colorado-based seller of gold mining properties, for the sale of the Liberty Gold Mines, a group of what is purportedly 21 gold "mining claims," or the right to explore for and extract minerals from a tract of land, located on 2,900 acres in Siskiyou County, California.

19. The online advertisement stated that the Liberty Gold Mines were located on a "billion dollar trend" and contained various maps purporting to show past areas of gold production in or around the Liberty Gold Mines, primarily between the period 1850 and 1965, as well as some "nuggets" of gold that were recovered in the area within the last ten years.

20. On September 30, 2016, Efuel issued a press release announcing that it was negotiating the purchase of a "portfolio of land and minerals" worth $500 million.

21. Similarly, in or around November 2016, the Company issued a press release stating that the portfolio of land contained "substantial mineral, gold, silver and other precious gems and metals" worth $500 million; and that the acquisition was a part of its "goals" to "purchase new money generating assets and grow existing assets," this time including a copy of the online advertisement from The Claim Post. It also stated that "reports indicate the mines could reap as much as 2 to 3 billion dollars in mineral deposits," which Efuel "conservatively valued" at $500 million.

22. On February 6, 2017, Efuel announced that it had executed the lease and purchase agreement for the Liberty Gold Mines. Setting aside the fact that Efuel had not yet entered into the agreement as of that date, the press release also falsely claimed that the mines were part of a "historically rich gold bearing trend, as stated and released by state and federal agencies, historians, geologists, scientists, and gold mining experts regarding this region," were "surrounded on all sides by a multi-billion dollar gold deposit," and were an "incredible opportunity to recover mass quantities of gold," without providing any further detail about the sources it relied on for these claims.

23. In fact, Efuel did not execute the lease and purchase agreement with The Claim Post until April 4, 2017. The agreement gave Efuel the right to explore for and extract minerals on the mines in exchange for a down payment of $3,500, monthly lease payments of $950 per month for six years (for a total of $68,400), a 5% royalty to The Claim Post on the value of any minerals extracted, and a commitment to transfer one

million shares of Efuel stock (which at the time was priced at $0.0004 per share). At the end of the lease term, Efuel has the option to purchase the land outright for a total purchase price of $750,000, minus the amount of the down payment and lease payments that Efuel has already made.

C. **Efuel's Disclosures Overstate the Value of the Company's Holdings and Growth Prospects**

24. On the same day that Efuel executed the lease-and-purchase agreement, it issued its financial report for the first quarter of 2017 in which it reported "Land, Minerals, and Gold deposit" as a $500 million asset on its balance sheet.

25. In the OTC financial disclosure that accompanied each of these reports, Efuel claimed that the financial report was "prepared in accordance with GAAP" and had been audited by Euro-American Finance Network, Inc., a company owned and operated by S. Stefanovic.

26. That same month, in a press release titled "Lucrative Growth Environment Predicted for EFLN," the Company claimed that its stock was currently undervalued, citing the "unmined minerals still to be unearthed and today's gold, mineral and land values." The Company claimed in a separate press release that month that the $500 million valuation for the gold mines was "quite conservative." The following month, it claimed that a "recent study" by scientists proved that there was more than $5 billion worth of gold in the Liberty Gold Mines.

27. Efuel again claimed "Land, Minerals, and Gold deposit" as a $500 million asset in its financial report for the second quarter of 2017, issued on July 31, 2017, and the related OTC financial disclosure again stated that the report was "prepared

in accordance with GAAP" and audited by Euro-American Finance Network, Inc., a company owned and operated by S. Stefanovic.

28.     On September 6, 2017, Efuel announced that it had scientists conducting detailed studies on the gold mines, that "physical recon, mineral examination, and other testing is ongoing in effort to define multiple target zones," and that "ground geo surveys and aerial electronic surveys will be conducted."

29.     Efuel reported assets of $500 million of "Land, Minerals, and Gold deposit" in its financial report for the third quarter of 2017, issued on October 8, 2017, which again claimed to be "prepared in accordance with GAAP" and audited by Euro-American Finance Network, Inc.[1]

30.     Defendants also retained an attorney to post an attorney opinion letter dated November 15, 2017 on OTC Markets' website.  In this letter, the attorney stated that he had reviewed Efuel's corporate books and records and believed that the Company's disclosures in its financial filings for the first through third quarters of 2017 were accurate, that the disclosures contained no false or misleading material facts, that the disclosures were internally prepared according to GAAP with auditing consultation from Euro-American Finance Network, Inc., and that they had been reviewed by a local independent accounting firm specializing in public disclosures.  Defendants, however,

---

[1]     Less than one month earlier, on September 15, 2017, OTC Markets designated Efuel's stock as "caveat emptor," or "buyer beware," due to its concern, among others, that the company's financial statements did not appear to be prepared in accordance with GAAP.  OavTC Markets' "caveat emptor" designation is meant to alert investors that there may be reason to exercise additional care and perform thorough due diligence before making an investment decision in that security.

Case 5:19-cv-00482-JSM-PRL   Document 1   Filed 09/24/19   Page 10 of 15 PageID 10

never provided the attorney any evidentiary support for its claimed valuation of $500 million with respect to the gold mines.

31. On January 1, 2018, Efuel issued its 2017 annual financial report, in which the reported assets of $500 million of "Land, Minerals, and Gold deposit" remained unchanged. Like the quarterly financial reports for 2017, Efuel asserted that the annual report for 2017 was "prepared in accordance with GAAP" and audited by Euro-American Finance Network, Inc.

32. Defendants again retained an attorney to post an attorney opinion letter dated February 8, 2018 to the OTC Markets website. The letter made the same representations as the November 15, 2017 letter, but with respect to all of Efuel's financial reports for 2017, including the annual report.

33. Each of the 2017 financial reports and OTC financial disclosures were prepared by S. Stefanovic and reviewed and approved by L. Stefanovic.

34. To date, Efuel has made approximately $28,000 in lease payments pursuant to the lease-and-purchase agreement, meaning it would still have to pay an additional $40,400 in lease payments before the option to purchase can be executed, at which time an additional payment of $678,100 will be required to own the land outright.

D. **Efuel's Financial Disclosures and Press Releases Were False and Misleading**

35. Defendants knew or were severely reckless in not knowing that Efuel's financial reports and press releases were materially false and misleading. Defendants never obtained any studies or reports to support the claimed $500 million valuation. Nor did they ever take any steps to determine the true value of any gold or other minerals

contained in the mines, to determine whether such gold or minerals could be extracted in an economically feasible manner, or to determine how to properly account for the transaction under GAAP.  During the Relevant Period, no representative of Efuel visited the property, either before or after Defendants executed the lease-and-purchase agreement.  Rather, Defendants relied exclusively on the unsubstantiated claims contained in the online advertisement for the Liberty Gold Mines and the seller's oral assurances to them that certain "geologic" and "scientific" reports existed to support these claims, as well as the Stefanovics' own subjective "beliefs" or "opinions" about the value of the mines.

**E.    Efuel's False and Misleading Financial Disclosures and Press Releases Were Material**

36.    Efuel's claim that its interests in the gold mines represented assets worth $500 million allowed the Company to increase its total assets from $19 million to $519 million.

37.    The price of, and volume of trading in, Efuel stock increased on each of the days on which Efuel released its 2017 quarterly and annual financial reports.  For example, on April 5, 2017, the day Efuel published its first financial report in which it claimed the $500 million worth of gold mining assets, Efuel's stock price jumped 125% and the volume of trading increased by 70%.

38.    Likewise, a number of the press releases at issue coincided with increases in Efuel's stock price and trading volume.  For instance, on May 5, 2017, the first time that Efuel publicly referred to a "recent," as opposed to historical, scientific

study to support its valuation of the Liberty Gold Mines, Efuel's stock price increased by 144% and trading volume by 84%.

## CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
(All Defendants)**

39.     The Commission realleges and incorporates by reference Paragraphs 1 through 38 of its Complaint.

40.     By engaging in the conduct described above, Defendants, with scienter, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, and in connection with the purchase or sale of securities, have: (a) employed devices, schemes or artifices to defraud; (b) made one or more untrue statements of material fact or one or more omissions of material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in one or more acts, practices or courses of business which operated or would operate as a fraud or deceit upon any person.

41.     By reason of the acts, omissions, practices, and courses of business set forth in this Complaint, Defendants have violated, and unless restrained and enjoined, will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Defendants and each of their agents, servants, employees, attorneys and other persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, by, directly or indirectly, making any false or misleading statement, or disseminating any false or misleading documents, materials, or information regarding Efuel, including in Efuel's financial disclosures, financial reports, press releases, and other communications with the investing public, or by engaging in a scheme to defraud involving the making or dissemination of false or misleading information about Efuel.

### II.

Permanently prohibiting the Stefanovics from acting as an officer or director of any issuer that has a class of securities registered under Section 12 of the Exchange Act, 15 U.S.C. § 78*l*, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d), pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2);

### III.

Permanently prohibiting the Stefanovics from participating in any offering of a penny stock, pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d);

### IV.

Ordering Defendants to disgorge any ill-gotten gains received from the conduct alleged in this Complaint and to pay prejudgment interest thereon;

### V.

Ordering Defendants to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3);

### VI.

Granting such other and further relief as this Court deems just and appropriate; and

### VII.

Further, the Commission respectfully requests that the Court retain jurisdiction over this action and over Defendants in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

# JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action as to all issues so triable.

Dated: September 24, 2019              Respectfully submitted,

By:   /s/ Christopher J. Dunnigan
      Christopher J. Dunnigan
      Senior Trial Counsel
      Telephone: (212) 336-0061
      Email: dunniganc@sec.gov

      Tuongvy T. Le
      Senior Counsel
      Telephone: (212) 336-5509
      Email: letu@sec.gov

      **ATTORNEYS FOR PLAINTIFF**
      **SECURITIES AND EXCHANGE COMMISSION**
      New York Regional Office
      Brookfield Place
      200 Vesey Street, Suite 400
      New York, New York 10281-1022
      Telephone: (212) 336-1100